UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| JUDITH J. JIMENEZ, on behalf of herself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) CIVIL ACTION |
| v. | ) ) ) FILE NO. _____ |
| TD BANK, N.A., | ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) |

**CLASS ACTION COMPLAINT**

Plaintiff Judith J. Jimenez, on behalf of herself and the class of persons preliminarily defined below, brings this Class Action Complaint against Defendant TD Bank, N.A. ("TD" or "TD Bank") as follows:

**INTRODUCTION**

1. This is a civil action seeking monetary damages from Defendant arising from its improper business practice of opening consumer checking accounts without permission or lawful authority.

2. In late 2016, the banking industry was rocked by the Wells Fargo unauthorized account scandal.

3. Consumers and some in the banking industry were stunned to learn that Wells Fargo had opened millions of fraudulent savings and checking accounts on behalf of its clients without their consent.

4. News of the fraud became widely known in late 2016 after various regulatory bodies, including the Consumer Financial Protection Bureau, fined the company $185 million as a result of the illegal activity.

5. Litigation over Wells Fargo's conduct resulted in a settlement with consumers who had accounts opened without their permission for $142 million in March 2017. Eventually Wells Fargo was forced to settlement with the Justice Department and Securities and Exchange Commission in 2020 for $3 billion.

6. As the Wells Fargo scandal broke, several banks, including TD, conducted their own internal reviews to determine if similar issues existed.

7. Following an internal audit in November 2016, a source familiar with the process indicated that the TD Bank did not find "anything systemic" as was the case with Wells Fargo.

8. While TD Bank attempted to ease any concern that it too was opening unauthorized accounts (and presumably generating improper fee income), the facts alleged herein paint a different picture.

9. Based on Ms. Jimenez's experience, and information gained from other TD customers, it is clear that TD Bank has a routine practice of opening and re-opening accounts in the names of consumers without lawful authority.

**PARTIES**

10. Plaintiff Judith J. Jimenez is a citizen of the State of Florida. Ms. Jimenez had a TD Simple Checking account with TD Bank.

11. Defendant TD Bank is headquartered in Cherry Hill, New Jersey. TD has approximately 1,300 branches and 1,900 ATM machines in the United States. By assets, TD Bank is now ranked 7th among U.S. banks by deposits and provides banking services to 6,500,000 east coast customers from Maine to Florida.

12. TD Bank has 242 branches in New Jersey and provides banking services to over 12% of the state's bank customers.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000, exclusive of interest and costs.

14. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of the State of Florida, whereas Defendant is a citizen of New Jersey for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Florida, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

15. Venue is proper in the District of New Jersey pursuant to the facts described above which include having the TD Bank headquarters, hundreds of bank branches, and hundreds of thousands of customers in this District.

## COMMON FACTUAL ALLEGATIONS

16. Ms. Jimenez has been a customer of TD Bank since 2005, when she opened an account with Mercantile Bank, which was acquired by TD in September 2010.

17. Consumer checking accounts issued by TD Bank, like the one Ms. Jimenez had, are governed by a Personal Deposit Account Agreement ("Agreement").

18. The Agreement authorizes TD Bank to terminate or close any account at any time.

19. For example, the Agreement provides:

3

> If you are in default, we may close any or all of your Accounts, with or without notice (unless notice is required under applicable law). . .

See Agreement, p. 24 (attached hereto as Exhibit 1).

20. The Agreement also states:

> **Our Right to Refuse/Close Accounts**: The Bank reserves the right to refuse to open any Account and to terminate any Account at any time, and for any reason, or no reason without notice to you (unless notice is required under applicable law).

See Agreement, p. 26.

21. However, at no point does the Agreement authorize TD to *sua sponte* open or re-open an account.

22. Despite the fact that the Agreement does not authorize TD Bank to open an account or re-open a closed account, TD has a routine practice of opening accounts in order to generate fee-based income to which it is not lawfully entitled.

23. Ms. Jimenez had a TD Simple Checking Account.

24. On April 15, 2020, TD Bank exercised the discretion afforded to it under the Agreement to close Ms. Jimenez's account without notice.

25. At the time her account was closed by the Bank, Ms. Jimenez had a positive balance of $342.65.

26. That same day, TD Bank issued a check to Ms. Jimenez for the balance of her account and mailed it to the post office box where Ms. Jimenez receives her mail.

27. The check received by Ms. Jimenez indicated that it was issued for the "Closed Account Ending 9188."

28. When Ms. Jimenez received her April 2020 bank statement, it contained the following notation in the withdrawals section: "ACCOUNT CLOSED, Cl-Demarketing D3E00096" and indicated that $342.65 was withdrawn from the account on April 15.

4

29. TD Bank did not provide Ms. Jimenez with any other explanation or documentation regarding the closure of her account.

30. While the circumstances around the closure of her account are unknown, it should be noted that Ms. Jimenez's account was not overdrawn nor were her financial affairs in disarray.

31. Rather, as noted above, Ms. Jimenez had been banking with TD Bank, or its predecessor, since 2005. Her account was in good standing.

32. Indeed, in the months leading up to TD Bank closing the account, Ms. Jimenez had only incurred one overdraft fee and had an average collected balance in her account ranging from $333.60 to $495.69.

33. Despite the fact that TD closed Ms. Jimenez's account on April 15, on April 17, without Ms. Jimenez's knowledge or permission, TD Bank opened or re-opened an account in Ms. Jimenez's name.

34. TD Bank opened or re-opened an account in Ms. Jimenez's name for at least four improper reasons: (1) to reverse a provisional credit of $12.31 that TD had previously issued to Ms. Jimenez; (2) to process a $35.00 check that Ms. Jimenez had written prior to TD Bank closing the account; (3) to assess Ms. Jimenez a monthly maintenance fee of $4.99 for her account; and (4) to assess bogus fees that amounted to nearly 100% profit for TD.

35. On April 20, TD Bank refused to pay the $35.00 check and assessed Ms. Jimenez an Overdraft-Returned Fee of $35.00 for that transaction and also assessed Ms. Jimenez an Overdraft-Paid Fee of $35.00 for the provisional credit reversal.

36. Thus, by secretly opening or re-opening an account in Ms. Jimenez's name without her authorization, TD Bank was able to generate $74.99 in fee-based income. It had essentially no expenses or risks to justify these fees. The fees were pure profit to TD.

37. Subsequently, on April 22, 2020, Ms. Jimenez's tax refund was deposited into the new or re-opened account.

38. Because TD had assessed the aforementioned fees and reversed the provisional credit, TD Bank took $87.30 of Ms. Jimenez's tax refund deposit to replenish her purportedly negative balance.

39. Over the next few days, TD Bank continued to process various transactions on Ms. Jimenez's improperly opened or re-opened account.

40. Ultimately, on April 28, TD Bank decided to close the new account in Ms. Jimenez's name.

41. Subsequently, Ms. Jimenez received a bank statement from TD for April 15, 2020 through April 28, 2020.

42. This bank statement contained the following notation in the withdrawals section: "ACCOUNT CLOSED, Cl-Demarketing D2E00278" and indicated that $84.88 was withdrawn from the account on April 28, which is the date TD closed the account.

43. Subsequently, Ms. Jimenez received a check for $84.88 from TD along with a another letter advising her that the Bank had closed an account in her name.

44. On April 22, 2020, Ms. Jimenez sent a letter to TD Bank asking for an explanation about her account being closed.

45. TD Bank has refused to respond to Ms. Jimenez's letter.

46. TD Bank's decision to open or re-open an account in Ms. Jimenez's name without her knowledge or authorization is not permitted under the Agreement.

47. Plaintiff's experience with TD Bank is not isolated, but rather is illustrative of Defendant's improper business practice.

## **CLASS ACTION ALLEGATIONS**

48. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated pursuant to Federal Rule 23. The Class includes:

> All persons who, within the applicable statute of limitations period, had a checking or savings account opened in their name by TD Bank without authorization.

49. Excluded from the Class is Defendant, Defendant's subsidiaries and affiliates, their officers, directors, and the members of their immediate families, and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

50. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass or subclasses if necessary before the Court determines whether certification is appropriate.

51. The Class will face common questions such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because TD Bank has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

   a) Whether TD Bank improperly opened accounts without permission;

   b) Whether any of the conduct described above violates the applicable contract;

   c) Whether any of the conduct described above violates the covenant of good faith and fair dealing;

   d) Whether any of the conduct described above constitutes unjust enrichment;

   e) Whether any of the conduct described above constitutes conversion; and

   f) The appropriate measure of damages.

52. The parties are numerous such that joinder of them all is impracticable. Upon information and belief, and subject to class discovery, the Class consist of thousands of members

7

or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to TD's records. TD Bank has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

53. It is impracticable to bring the Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

54. Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by TD Bank, as described herein.

55. Plaintiff is more than an adequate representative of the Class in that Plaintiff has or had a TD Bank checking account and has suffered damages as a result of TD's contract violations, violations of the covenant of good faith and fair dealing, unjust enrichment, and/or conversion. In addition:

   a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

   b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

   c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

   d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

56. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

57. TD Bank has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

58. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION
## COUNT I
## BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Class)

59. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

60. Plaintiff and TD Bank contracted for checking account services, as embodied in the Personal Deposit Account Agreement.

61. TD Bank breached the terms of the Agreement.

62. For example, the Agreement only provides for TD to remove customer funds from an "Account," but the word "Account" is defined in the Agreement to exclude accounts not opened by the customer:

> **"Account"** means your Checking Account, Money Market Account, personal CD Account and/or Savings Account with us, including Individual Retirement Accounts (IRAs), as applicable, unless limited by the heading under which it appears.
>
> **"You"** and **"your"** mean each depositor who opens an Account, and any joint owner of each Account.

Agreement, p. 4.

63. TD is only authorized to assess fees on "Accounts" opened by customers or for services which the customer otherwise requests:

9

> This Agreement includes your promise to pay the charges listed on the Personal Fee Schedule and Account Maintenance Information grid and your permission for us to deduct these charges, as earned, directly from your Account. You also agree to pay any additional reasonable charges we may impose for services you request which are not contemplated by this Agreement but are disclosed in our Personal Fee Schedule which may be amended from time to time.

Id.

64. Accounts are not permitted to be opened without express customer consent:

> **Important Information for Opening a New Account**
> To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an Account. When you open an Account, we will ask for your name, legal address, date of birth, Social Security or Tax Identification Number, and other information that will allow us to identify you. We may also ask to see your driver's license or any other identifying documents.

Id. at 14.

65. Even TD Bank's self-serving contractual provisions preclude the opening or re-opening of an account in order to seize funds TD claims it is owed:

> **If You Owe Us Money**
> If you withdraw funds from your Account that you do not have a right to withdraw, including the amount of a check or other item which we later charge back to your Account or any amounts that may be credited to your Account in error, you will have to pay us back. If you do not, the Bank may apply the funds in or deposits to your Account (or any other related account) against the debt or obligation owed to us, without providing notice to you, except that this provision does not apply to any consumer credit covered by the federal Truth in Lending law.

Id. at 21-22.

66. TD Bank's seizure of funds violated other terms of the Agreement, including:

You will owe us for any fees or transactions that are pending during the Account closure process or that post to your Account *before* we close the Account.

Id. at 27 (emphasis added).

67. Plaintiff and members of the putative Class have performed all of their obligations pursuant to the Agreement.

10

68. Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's decision to open accounts without authorization.

69. All of the relevant states mandate that an implied covenant of good faith and fair dealing govern every contract. For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

70. This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

71. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of a lack of good faith in the performance of contracts.

72. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

73. TD Bank breached the covenant of good faith and fair dealing by using the discretion it affords itself under the Agreement to open an account in Ms. Jimenez's name, accept deposits into the account without her permission, and then seize funds from the account. Nowhere in TD's 60-page Agreement does it provide explicit authority for such conduct. As such, TD must

interpret one of its many self-serving contractual provisions to provide it the discretion to take these actions.

74. Any such discretion, however, must be exercised in good faith.

75. Defendant's actions were not taken in good faith, TD did not deal fairly, and it acted in a manner that was arbitrary and capricious.

76. Plaintiff and members of the putative Class have performed all of the obligations imposed on them pursuant to the Agreement.

77. Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

78. Whether viewed as a direct breach of the Agreement, or as a violation of good faith and fair dealing, Plaintiff and the Class should be made whole from the damages suffered by TD Bank's decision to open unauthorized accounts.

## COUNT II
## UNJUST ENRICHMENT
## (In the Alternative to COUNT I)
## (On Behalf of Plaintiff and the Class)

79. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

80. This Count is brought solely in the alternative. Plaintiff acknowledges that her breach of contract claim cannot be tried along with unjust enrichment.

81. The Agreement may not apply in instances where TD Bank has opened accounts without customer permission. For example, the Agreement itself limits its applicability as flows:

> By ***opening*** and maintaining an Account with the Bank, you agree to the provisions of this Agreement, so you should read this Agreement thoroughly and keep it with other important records.

Agreement, p. 4 (emphasis added). If breach of contract principles do not apply, then unjust enrichment affords Plaintiff and the Class a legal basis for recovery.

82. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

83. Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant the fees that resulted from TD's unauthorized opening of the account, which was not disclosed or allowed by the Agreement.

84. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits which, under the circumstances, it would be unjust to allow Defendant to retain.

85. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## COUNT III
## CONVERSION
### (On Behalf of Plaintiff and the Class)

86. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

87. Defendant had and continues to have a duty to maintain and preserve customers' checking accounts and prevent their diminishment through its own wrongful acts.

88. Defendant has wrongfully collected fee revenue from Plaintiff and the members of the Class after improperly opening an account, and has taken specific and readily identifiable funds from these accounts unlawfully.

89. Defendant has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Class, without legal justification.

90. Defendant continues to retain these funds unlawfully without the consent of Plaintiff or the members of the Class.

91. Defendant intended to permanently deprive Plaintiff and the members of the Class of these funds.

92. These funds were properly owned by Plaintiff and the members of the Class, not Defendant, which now claims that it is entitled to its ownership, contrary to the rights of Plaintiff and the members of the Class.

93. Plaintiff and the members of the Class are entitled to the immediate possession or repossession of these funds.

94. Defendant has wrongfully converted these specific and readily identifiable funds.

95. As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Class have suffered and continue to suffer damages.

96. By reason of the foregoing, Plaintiff and the members of the Class are entitled to recover from the Defendant all damages and costs permitted by law, including all amounts that Defendant had wrongfully converted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

1. Certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Class, and appointing counsel for Plaintiff as counsel for the Class;

2. Declaring that Defendant's policies and practices as described herein constitute a breach of contract, breach of the covenant of good faith and fair dealing, conversion, or unjust enrichment;

3. Enjoining Defendant from the wrongful conduct as described herein;

4. Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

5. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

6. Awarding actual and/or compensatory damages in an amount according to proof;

7. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

8. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

9. Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

DATED this 24th day June, 2020.

                              Respectfully submitted,

BY:    GOLOMB & HONIK, P.C.

*/s/ Richard M. Golomb*
Richard M. Golomb
Kenneth J. Grunfeld
1835 Market Street, Suite 2900
Philadelphia, PA 19103
(215) 985-9177
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

E. Adam Webb*
  Georgia Bar No. 743910
Matthew C. Klase*
  Georgia Bar No. 141903
G. Franklin Lemond, Jr.*
  Georgia Bar No. 141315
1900 The Exchange, S.E.
Suite 480

Atlanta, Georgia 30339
(770) 444-9325
Adam@WebbLLC.com
Matt@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiff*

\* Pro Hac Vice application forthcoming