## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| JUDITH JIMENEZ, KATHY FOGEL, and STEPHANIE VIL, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil No. 1:20-cv-07699-NLH-EAP |
| TD BANK, N.A., | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN

Plaintiffs Judith Jimenez, Kathy Fogel, and Stephanie Vil (collectively, "Plaintiffs")[1] respectfully submit this memorandum of law in support of their motion for: (1) preliminary approval of the settlement between Plaintiffs and Defendant TD Bank, N.A. ("Defendant" or "TD"); (2) certification of a class for purposes of the settlement; (3) appointment of Class Counsel for the Settlement Class; (4) appointment of Plaintiff Judith Jimenez as Class Representative; (5) approval of the notice plan; and (6) leave to file a motion for Attorneys' Fees, reimbursement of Expenses, and Service Awards for the named Plaintiffs.

## INTRODUCTION

Plaintiffs brought this action over two years ago challenging TD's alleged practice of reopening accounts in order to post subsequent transactions, which resulted in the assessment of

---

[1] All capitalized terms used herein have the same meanings ascribed in the Settlement Agreement.

overdraft fees and maintenance fees in connection with the subsequent transactions. After years of litigation, and arm's-length negotiations towards a settlement, Plaintiffs have reached a final Settlement with the Defendant. *See* Settlement Agreement and Release (the "Settlement Agreement") (Exhibit 2 to Joint Declaration of E. Adam Webb and G. Franklin Lemond, Jr.). As described in more detail below, the Settlement Agreement provides for substantial and immediate economic relief to the proposed Settlement Class and represents an excellent outcome for members of the proposed Settlement Class.

In considering whether to grant preliminary approval of this settlement, the Court must determine whether the settlement was reached as a result of informed, arm's-length negotiations and is sufficiently fair, reasonable, and adequate that the Court will likely be able to finally approve the settlement after notice and an opportunity to opt out is provided to the Settlement Class. As explained in further detail below, the Settlement Agreement exceeds these standards governing preliminary approval. There are no obvious deficiencies, and the Settlement Agreement falls well within the range of reasonableness. Its terms reflect a fair and reasonable result that is beneficial to all Settlement Class Members. The Settlement Agreement was reached after arm's-length negotiations before a neutral third-party mediator and following strongly contested litigation over the course of over two years. In light of the work invested in this case since its filing in 2020, the Parties and all counsel are well informed and positioned to assess the risks and merit of the case.

Accordingly, Plaintiffs respectfully request that the Court grant their motion.

## **BACKGROUND**

## I.     **LITIGATION HISTORY**

On June 24, 2020, Plaintiff Judith Jimenez, on behalf of herself and others similarly situated, filed her complaint against TD Bank for its allegedly improper business practices

associated with reopening consumer checking accounts that had previously been closed. *See* Joint Declaration of E. Adam Webb and G. Franklin Lemond, Jr., ¶ 10 ("Plaintiffs' Counsel Decl."). Following the commencement of this action, TD's deadline to respond to the Complaint was extended so that the parties could engage in good faith negotiations aimed at resolving this matter. *Id.* at ¶ 11; *also* ECF Nos. 12, 20, 22. After these efforts were unsuccessful, the parties entered into a stipulation allowing Plaintiff to file an amended complaint and establishing a briefing schedule on TD's forthcoming motion to dismiss. *See* Plaintiffs' Counsel Decl., ¶ 12; ECF No. 24. The stipulation was approved by the Court on December 22, 2020. *See* ECF No. 25.

On January 22, 2021, Plaintiff filed an Amended Complaint, adding Kathy Fogel and Stephanie Vil as additional plaintiffs and adding additional claims against TD Bank, including claims under the Fair Credit Reporting Act and the Electronic Fund Transfer Act. *See* ECF No. 28. In response, on February 19, 2021, TD Bank filed a motion to dismiss. *See* ECF No. 32. On September 27, 2021, after briefing on TD Bank's motion was complete, the district court issued a written Opinion (ECF No. 44) and entered an Order (ECF No. 45) denying in part, and granting in part, TD Bank's motion to dismiss. The Court also granted Plaintiffs leave to file a further amended pleading.

On October 11, 2021, Plaintiffs filed their Second Amended Complaint. *See* ECF No. 50. In response, on November 24, 2021, TD Bank filed a motion to partially dismiss the Second Amended Complaint, attacking the new allegations contained in ECF No. 50. *See* ECF No. 56. Plaintiff filed their opposition to the request for partial dismissal on December 20, 2021 (ECF No. 63) and Defendant filed a reply brief on January 10, 2022 (ECF No. 65).

At the same time the parties were briefing TD Bank's request for partial dismissal, the parties participated in a telephonic scheduling conference with the Court, and negotiated and filed a confidentiality agreement and ESI protocol that were adopted by the Court. *See* Plaintiffs' Counsel Decl., ¶ 20; ECF Nos. 55, 57, 58, 59, 60. Thereafter, the parties engaged in substantial and meaningful discovery. *See* Plaintiffs' Counsel Decl., ¶ 21. Written discovery was served and responded to; a substantial number of electronic documents were collected and produced; and the parties reviewed the responsive documents that were produced. *Id.* On July 8, 2022, the Court entered an Amended Scheduling Order at the parties' request. *Id.* at ¶ 22; ECF No. 79.

## II.    SETTLEMENT NEGOTIATIONS

On December 19, 2022, the Parties participated in mediation with Magistrate Judge Joel Schneider (ret.) of Montgomery McCracken Walker & Rhoads LLP and reached an agreement in principle to resolve this matter on a class-wide basis. *See* Plaintiffs' Counsel Decl., ¶ 23. Over the next several weeks, the parties worked to finalize the specific terms of the agreement. The parties exchanged multiple redlined drafts, which included fine tuning the allocation formula to ensure payments are fairly divided among Settlement Class Members in accordance with Plaintiffs' theories in a logistically feasible manner. *Id.* at ¶ 24. The parties also focused on how notice and eventually payments could most efficiently and fairly be disseminated to the Settlement Class Members. *Id.* The parties also exchanged multiple drafts of the notices and claim form to ensure that the settlement was accurately and appropriately described to the Settlement Class. *Id.*

The parties did not negotiate the amount of fees and expenses or service awards to the Plaintiffs until after the substantive provisions of the settlement, including the amount of the direct relief to the Settlement Class, was agreed upon. *Id.* at ¶ 25. Consensus was reached on final drafts of the agreement, notices, and allocation formula in March 2023. *Id.* at ¶ 26. Through the Agreement,

the Parties now agree to settle the Action in its entirety, without any admission of liability. This includes settlement of all Released Claims of the Settlement Class, as well as the individual settlement of two Plaintiffs, Ms. Vil and Ms. Fogel, who it turned out following discovery are not members of the class on whose behalf the case was brought and settled. *See infra*, Part III.F. The Parties intend this Agreement to bind Plaintiffs, TD Bank, and all Settlement Class Members who do not timely request to be excluded from the Settlement Agreement.

## III.    PROVISIONS OF THE SETTLEMENT AGREEMENT

### A.    The Settlement Class

Plaintiffs seek approval of the following nationwide class, for settlement purposes only:

> All current and former holders of an Eligible Account that, between June 24, 2014 and the date of Preliminary Approval, was reopened by TD Bank without customer authorization after the Eligible Account's closure and had a debit, credit, or fee post to the Eligible Account after that reopening.[2]

Settlement Agreement, ¶ 52.

### B.    The Compensatory Provisions

TD has agreed to create a fund in the amount of Four Million Nine Hundred Thousand and 00/100 Dollars ($4,900,000.00). This Settlement Payment Amount includes all monetary disbursements incurred in connection with the Settlement, i.e., the settlement of the class claims, including but not limited to (a) all monetary payments to the Settlement Class; (b) all Administrative Costs; (c) all attorneys' fees, costs, and expenses awarded by the Court to Class Counsel; and (d) all Service Awards to be paid to Plaintiffs. *See* Settlement Agreement, ¶ 55. For avoidance of doubt, TD Bank shall not be required to pay any money beyond the Cash

---

[2] For clarity, current and former holders of Eligible Accounts who consented to or requested the Eligible Account reopening are not members of the Settlement Class. Any current or former holders of jointly-held Eligible Accounts also are not members of the Settlement Class if one of the joint holders consented to or requested the reopening

Settlement Amount, with the sole exception of the Individual Awards to be paid to Ms. Vil and Ms. Fogel in exchange for the release of their individual claims, as provided for in Section XVI of the Agreement. *Id.*

Under the Settlement, an estimated 93,000 potential Settlement Class Members can receive a payment if they submit a simple claim form, which they can do electronically via the Settlement Website, or by mail using a form available on the same website. Participating Settlement Class Members can submit either (1) a Basic Claim, in which case they will be paid a Basic Payment of $125, subject to sufficient funds in the Net Cash Settlement Amount, and they will not be obligated to provide with the Claim Form a statement or any documentary evidence of post-reopening unauthorized transactions on the Eligible Account(s); or (2) an Enhanced Claim, if they believe that there were post-reopening unauthorized transactions on the Eligible Account(s) causing monetary losses which exceeded the Basic Payment, in which case they are required to provide with the Claim Form a statement and documentary evidence of any such post-reopening unauthorized transactions and resulting monetary losses on the Eligible Account(s).

If the Net Cash Settlement Amount is sufficient, each Claimant who submits a valid and approved Claim (both Basic and Enhanced Claims) will receive at least a $125 Basic Payment. If the amount of $125 Basic Payments owed exceeds the Net Cash Settlement Amount, then the amount of each Basic Payment will be decreased so that each approved Claimant receives an equal distribution from the Net Cash Settlement Amount. If the total amount of Basic Payments does not exhaust the Net Cash Settlement Amount, then Claimants who submit a valid and approved Enhanced Claim shall instead receive an Enhanced Payment equal to the amount of post-reopening unauthorized transactions on the Eligible Account(s) listed on their Claim Form and substantiated with documentary evidence. In the event that the sum of the Basic Payments and approved Enhanced

Payments would exceed the Net Cash Settlement Amount, then the approved Enhanced Payments will be decreased on a pro rata basis to no less than the Basic Payment until the total amount of Basic Payments and Enhanced Payments equals the Net Cash Settlement Amount.

In the event the Net Cash Settlement Amount exceeds the sum of the Basic Payments and approved Enhanced Payments, then the Net Cash Settlement Amount will be distributed equally to each Claimant who submits a valid and approved Claim (both Basic and Enhanced Claims).  As set forth in the Settlement Agreement, in no case will any Claimants who are entitled to an Enhanced Payment receive less than the Basic Payment.

This payment formula is set forth not just in the text of the Agreement, but also in an explanatory table enclosed with the Agreement.  *See* Appendix A to Settlement Agreement.

### C.    Change in Disclosures

After Plaintiffs filed this action, Defendant changed its Personal Deposit Account Agreement to include the following language:

> After an Account is closed, we may within our sole discretion re-open an Account to debit a transaction, recover a loss, reverse provisional credit, or for any other reason.  If we re-open an Account, the terms of this Agreement continue to apply to the Account.

*See* Plaintiffs' Counsel Decl., ¶ 27.  Although this change in disclosures was not a negotiated part of this Settlement Agreement, it is Plaintiffs' submission that it was almost certainly a result of this litigation.  *Id.* at ¶ 28.

### D.    The Release Provisions

In exchange for the consideration described above, Plaintiffs and Participating Settlement Class Members agree to release Defendant and its present and former parents, subsidiaries, divisions, affiliates and other specified related parties from any and all liabilities, rights, claims, actions, causes of action, and other specified remedies, that constitute, result from, arise out of,

are based upon, or relate to any of the claims that were or could have been asserted in the Action. The full text of the proposed releases is set forth in the Settlement Agreement. *See* Settlement Agreement, ¶¶ 116-21.

     **E.**    **Attorneys' Fees, Expenses, and Service Awards.**

The Parties and their counsel did not discuss the provisions regarding attorneys' fees or Service Awards until after the Parties had already agreed upon the terms of the Settlement Agreement in principle, and substantive elements of the Settlement Agreement had been negotiated. Under the terms of the Settlement Agreement, Class Counsel intends to submit a Fee and Expense Application to the Court prior to Final Approval, and any amount awarded by the Court shall be paid by the Settlement Administrator from the Settlement Fund. *See* Plaintiffs' Counsel Decl., ¶ 21. Defendant has agreed not to oppose any application not to exceed One Million, Six Hundred Thirty-One Thousand, Seven Hundred Dollars ($1,631,700), plus costs and expenses. *See* Settlement Agreement, ¶ 122.

On behalf of the three Plaintiffs, Class Counsel intends to seek Service Awards not to exceed the total amount of $18,000.00. *Id.* at ¶ 124. Judith Jimenez, the original named Plaintiff. will receive $8,000, and Kathy Fogel and Stephanie Vil will receive $5,000 each. *Id.* Although Ms. Fogel and Ms. Vil are not members of the Settlement Class, *see infra*, they have contributed significant time and effort to this litigation, including by conferring with Class Counsel, responding to written discovery requests, and producing documents. Defendant has agreed not oppose such a request for Service Awards, which shall be paid by the Settlement Administrator to Plaintiffs out of the Settlement Fund. *Id.*

The Parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees or Service Awards shall not prevent the Settlement Agreement from becoming Effective, nor shall it be grounds for termination. *Id.*

### F.     Individual Awards to Non-Settlement Class Member Plaintiffs

It became apparent following discovery that, of the three Plaintiffs, only Ms. Jimenez is a member of the class on whose behalf this litigation was brought and settled. In exchange for the release of their individual claims, TD Bank has agreed to pay Ms. Vil $348.49 and Ms. Fogel $100, amounts which are reflective of their respective alleged damages. *See* Settlement Agreement, ¶ 126. These Individual Awards shall not be paid out of the Settlement Fund Account and shall be separate from, and in addition to, the Cash Settlement Amount. *Id.*, ¶ 127.

The Parties negotiated and reached agreement regarding the Individual Awards to Ms. Vil and Ms. Fogel only after reaching agreement on the material terms of this Settlement. *Id.* ¶ 128. While the Parties do not believe that the Individual Awards require Court approval, the Parties nevertheless agree that the Court's failure to approve the Individual Awards to Ms. Vil and Ms. Fogel shall not prevent the Settlement Agreement from otherwise become effective, nor shall it be grounds for termination. *Id.*

## LEGAL ARGUMENT

## I.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

Rule 23(e) requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e). Rule 23(e)(1)(B), as amended December 1, 2018, directs a court to grant preliminary settlement approval and direct notice to the proposed class if the court "will likely be able to" grant final approval under Rule 23(e)(2) and "will likely be able to" certify a settlement class for purposes of entering judgment. Fed. R. Civ. P. 23(e)(1)(B).

In considering approval of a proposed settlement, courts are mindful of the strong judicial policy in favor of voluntary settlements particularly in the class action context. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011). The Third Circuit has observed that there is "an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *also, e.g.*, *In re Gen. Motors*, 55 F.3d 768, 784 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"). As a result, courts "should be 'hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation.'" *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 Fed. App'x 146, 150 (3d Cir. 2015) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013)).

Here, the Court should grant preliminary approval because it "will likely be able to" both grant final approval to the Settlement Agreement as "fair, reasonable, and adequate" and certify the Settlement Class for purposes of entering judgment after notice and a final approval hearing.

### A.     The Standard for Granting Preliminary Approval of the Settlement.

Rule 23(e)(2) sets out the factors a court must consider in determining whether a proposed class action settlement is "fair, reasonable, and adequate." Those factors are, whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As the Advisory Committee's note to the 2018 Rule 23 Amendment explains, subsections (A) and (B) focus on the "procedural" fairness of a settlement and subsections (C) and (D) focus on the "substantive" fairness of the settlement. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. In addition, the Third Circuit has provided guidance on the factors a Court should consider to decide whether to approve a class action settlement. *See Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 348 (D.N.J. 2020). The *Girsh* factors are:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

11

*Somogyi*, 495 F. Supp. 3d at 348 (citing *Girsh*, 521 F.2d at 157).  These factors are merely a guide and the absence of one or more does not automatically render the settlement unfair.  *In re Valeant Pharmaceuticals Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at \*7 (D.N.J. June 15, 2020).

The 2018 amendment, however, recognizes that "[t]he sheer number of factors" considered in various Circuits "can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  The 2018 Amendment "therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.*

Approval of a class-action settlement "is a two-step process: preliminary approval and a subsequent fairness hearing."  *Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, at \*2 (D.N.J. July 16, 2007).  At the preliminary approval stage, counsel must submit the proposed terms of the settlement to the Court for preliminary fairness evaluation.  After a preliminary fairness finding and dissemination of notice to the settlement class members, the Court then must conduct a formal fairness and final approval hearing.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997).

B.    **The Proposed Settlement Agreement Qualifies for Preliminary Approval.**

As a procedural matter, the proposed Settlement Agreement is entitled to a presumption of fairness because it was negotiated at arm's-length after significant litigation and discovery, and Class Counsel are highly experienced in similar litigation.  As a substantive matter, the terms of the Settlement Agreement represent an excellent result for the Settlement Class.

1.    **The Proposed Settlement is the Result of Vigorous, Informed, Arm's-Length Negotiation.**

Preliminary approval analysis "often focuses on whether the settlement is the product of 'arms-length negotiations.'" *Kress v. Fulton Bank, N.A.*, 2022 WL 2357296, at *2 (D.N.J. June 30, 2022). Here, the Settlement Agreement is the result of arm's-length negotiations, which included mediation with Magistrate Judge Joel Schneider, now retired, between Class Counsel and counsel for Defendant. During these negotiations, Class Counsel and Defendant's Counsel vigorously advocated their respective clients' positions, and all parties were prepared to litigate the case fully if no settlement was reached. Class Counsel are experienced litigators in consumer class actions like this one.[3]

Based on their experience, Class Counsel believe that this Settlement Agreement provides significant benefits to the Settlement Class, avoids the risks and delays associated with continued litigation, and is in the Settlement Class Members' best interest. *See In re Am. Fam. Enterprises*, 256 B.R. 377, 421 (D.N.J. 2000) ("In determining the fairness, adequacy, and reasonableness of a proposed settlement, significant weight should also be given 'to the belief of experienced counsel that settlement is in the best interest of the class'"); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000), *aff'd sub nom.* 264 F.3d 201 (3d Cir. 2001) ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'"). The Parties' extensive arm's-length negotiations fully support a finding that the proposed settlement is fair.

---

[3] *See* Plaintiffs' Counsel Decl. at ¶¶ 55-56 (referencing the experience and qualifications of Plaintiffs' Class Counsel).

2.    **The Extent of Litigation and Discovery at the Time the Settlement Agreement Was Negotiated Supports Preliminary Approval.**

The stage at which settlement occurs demonstrates "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Corp.*, 55 F.3d at 813. "Where [the] negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent." *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D.N.J. 2006) (citing *In re Linerboard Antitrust Litig.*, 292 F. Supp.2d 631, 640 (E.D. Pa. 2003)). Significant discovery undertaken prior to reaching a settlement supports a finding that the settlement is within the range of reasonableness. *Smith v. Pro. Billing & Mgmt. Servs., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007).

Here, Class Counsel undertook extensive discovery that allowed Class Counsel to be fully informed on the material issues before negotiating a settlement on behalf of the Settlement Class. The Parties exchanged thousands of pages of records, and responded to interrogatories and requests for production of documents. *See* Plaintiffs' Counsel Decl., ¶ 21. In addition, the Parties engaged in data analysis in preparation for mediation with Judge Schneider. Accordingly, the extensive discovery taken here supports a finding that the settlement is within the range of reasonableness.

3.    **The Proposed Settlement Agreement is Well Within the Range of Possible Approval.**

Courts also evaluate the range of reasonableness of the fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of the alternate risks of litigation. *Somogyi*, 495 F. Supp. 3d at 352. Here, the Settlement Agreement is fair, reasonable, and represents an excellent result for the Settlement Class. Under the Settlement Agreement, Defendant has agreed to fund a $4.9 million Settlement Fund to pay compensatory relief to the Settlement Class in the form of cash payments. *See* Settlement

Agreement, ¶ 86.  Those payments are designed to compensate all Participating Settlement Class Members who submit a valid claim.  Participating Settlement Class Members can submit either (1) a Basic Claim, in which case they will be paid a Basic Payment of $125, subject to sufficient funds in the Net Cash Settlement Amount, without being obligated to submit any documentary evidence of post-reopening unauthorized transactions; or (2) an Enhanced Claim, if they believe that there were post-reopening unauthorized transactions on the Eligible Account(s) causing monetary losses which exceeded the Basic Payment, in which case they are required to provide with the Claim Form a statement and documentary evidence of any such post-reopening unauthorized transactions and resulting monetary losses.

This result is highly favorable to the Settlement Class.  The compensatory relief from the Settlement Agreement provides an immediate and sound recovery in relation to the damages potentially available and the risk of continued litigation.  In general, the inherent risk of continued litigation reinforces the fact that the Settlement Agreement falls within the range of reasonableness.  *See In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *24 (D.N.J. Sept. 13, 2005) (citations omitted) (noting that as long as a settlement "is reasonable relative to other factors, such as the risk of no recovery," it may be approved, even if it may "amount to a hundredth or even a thousandth of a single percent of the potential recovery").  And in particular here, given the Court's rejection of some of Plaintiffs' legal theories at the pleading stage, the Settlement Agreement provides a good result for the Settlement Class.  In sum, the significant relief available under the Settlement Agreement falls well within the range of possible final approval.

II.    **THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION.**

Plaintiffs' unopposed motion satisfies all the requirements of certification of the Settlement Class.  The Third Circuit has approved class certification in light of settlement where the class satisfies the requirements of Federal Rules of Civil Procedure 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy) and 23(b).  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010).  However, in the settlement context, the Court need not consider whether the case would present intractable management problems since, as a result of settlement, there will be no trial.  *Sullivan*, 667 F.3d at 322, n.56.  Because the proposed Settlement Class meets all applicable requirements of Rule 23, it should be certified.

A.    **The Settlement Class Meets The Requirements Of Rule 23(a).**

To be certified, a class must meet four criteria: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  *See* Fed. R. Civ. P. 23.  All of these requirements are met in this case.

1.    **The Numerosity Requirement Has Been Satisfied.**

Numerosity requires the members of a class to demonstrate the class is so numerous that "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is generally satisfied where a proposed class exceeds forty (40) class members.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  As the proposed Settlement Class contains more than 90,000 potential members, the numerosity requirement is easily satisfied.

16

## 2.     The Commonality Requirement Has Been Satisfied.

The Rule 23(a)(2) "commonality" requirement is satisfied if there is *at least one* common question of fact or law between the Plaintiff Judith Jimenez's claims and those of the Settlement Class.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (agreeing that "[f]or purposes of Rule 23(a)(2), even a single common question will do").  As such, "the United States Court of Appeals for the Third Circuit 'has recognized that courts have set a low threshold for satisfying this requirement.'"  *In re Merck & Co. Inc., Vytorin/Zetia Sec. Litig.*, 2012 WL 4482041, at *3 (D.N.J. Sept. 25, 2012) (quoting *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 627 (3d Cir. 1996)).

Here, there are many common issues of fact and law, including:

- Whether TD Bank's reopening of accounts without customer authorization after the account's closure in order to post a debit, credit, or fee to the account was a breach of contract or a breach of the covenant of good faith and fair dealing;

- Whether TD Bank's reopening of accounts without customer authorization after the account's closure in order to post a debit, credit, or fee to the account constituted unjust enrichment;

- Whether TD Bank's reopening of accounts without customer authorization after the account's closure in order to post a debit, credit, or fee to the account constituted conversion;

- Whether TD Bank's reopening of accounts without customer authorization after the account's closure in order to post a debit, credit, or fee to the account constituted a violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.*;

- Whether TD Bank's reopening of accounts without customer authorization after the account's closure in order to post a debit, credit, or fee to the account constituted a violation of the Massachusetts Consumer Protection Law, Mass. Gen. Laws Ann. ch. 93A, § 2; and/or

- Whether Ms. Jimenez and other members of the Settlement Class have been damaged as a result of TD Bank's alleged wrongful business practices described herein.

17

These issues are more than sufficient to satisfy Rule 23(a)(2)'s commonality requirement.

### 3.    The Typicality Requirement Has Been Satisfied.

Plaintiff Judith Jimenez's claims are also typical of the claims of the Settlement Class as a whole, thus satisfying Rule 23(a)(3).  Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citation omitted).  Factual differences between class members do not defeat typicality if the claims arise from the "same event or practice or course of conduct." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998).

Here, Ms. Jimenez's claims and those of Settlement Class Members arise from the same conduct.  *See generally In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002).  Ms. Jimenez's claims are typical of claims of all of the Members of the Settlement Class, all of whom were holders of an Eligible Account that, between June 24, 2014 and the date of Preliminary Approval, was reopened by TD without customer authorization after the Eligible Account's closure and had a debit, credit, or fee post to the Eligible Account after that reopening.  While Defendant has not yet had the opportunity to challenge typicality formally in the class certification process, Ms. Jimenez is confident that her claims arise from the same course of events that each Settlement Class Member was subjected to, and that this same conduct caused the same injury to all of the Settlement Class Members.  The typicality prong is satisfied here.

### 4.    Ms. Jimenez Will Adequately Protect the Interests of the Class.

Rule 23(a)(4) is also met because Ms. Jimenez will fairly and adequately protect the interests of the Settlement Class.  Adequacy "is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation; and (2) class representatives have no conflicts

of interest." *Chocolate*, 289 F.R.D. at 218 (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).  Here the adequacy requirement is plainly met.

No conflict exists between the named and unnamed putative Settlement Class Members because their interests are aligned.  Ms. Jimenez and the Settlement Class Members have all been injured by the same purported conduct.  Ms. Jimenez does not have any interests antagonistic to those of the other Settlement Class Members and all Settlement Class Members share a strong interest in proving Defendant's liability.  *See Blood Reagents*, 283 F.R.D. at 234 (finding adequacy requirement met where there was "no evidence of any conflict of interest between the named plaintiffs and the absent members of the putative class").  In proving her claims, Ms. Jimenez would prove the claims of the Settlement Class.  *Id.* Further, Ms. Jimenez has been actively protecting the interests of the putative Settlement Class.  She, along with Ms. Vil and Ms. Fogel, have engaged in the prosecution of this matter since its inception, having consistently conferred with Class Counsel, reviewed the various versions of the complaints in the Action, reviewed and signed their interrogatory responses, provided documents and consulted with their counsel regarding the propriety of the Settlement Agreement.

Plaintiffs are also represented by experienced counsel who has litigated this case vigorously on behalf of the class.[4]  Plaintiffs' counsel have extensive experience prosecuting cases against TD and in consumer class actions as well.  *See* Plaintiffs' Counsel Decl. at ¶¶ 55-56.  They have spent over two years litigating this action as well.  *See Blood Reagents*, 283

---

[4] Defendant is also represented by qualified and competent class actions litigators, well-positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement.

F.R.D. at 233 (finding representation adequate based on counsel's extensive experience prosecuting complex cases).  As a result, the adequacy requirement is satisfied.[5]

**B.    The Requirements of Rule 23(b)(3) Are Satisfied Because Questions Common to the Class Predominate and a Class Action Is Superior to Other Available Methods of Adjudication.**

In addition to the four requirements of Rule 23(a), the proposed class must also satisfy at least one provision of Rule 23(b).  Rule 23(b)(3) is satisfied when: (1) the questions of law or fact common to the class predominate over any questions affecting only individual class members ("predominance"); and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority").  Fed. R. Civ. P. 23(b)(3); *Anchem*, 521 U.S. at 615.  Both of these requirements are met here.

**1.    Predominance Exists Here.**

The predominance standard requires the Court to "determine whether the common legal and factual issues are more significant than the non-common issues such that the class is 'sufficiently cohesive to warrant adjudication by representation.'"  *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) (quoting *Amchem*, 521 U.S. at 623).  "'[I]n general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' [sic] individual position.'"  *In re Bulk (Extruded) Graphite Products Antitrust*

---

[5] In addition to the Rule 23 requirements, Courts also analyze the judicially created doctrine of ascertainability when evaluating whether to certify a class.  A class is ascertainable if "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."  *Byrd's v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).  Here, the Settlement Class is defined with reference to objective criteria and the determination of whether someone is within the settlement class is administratively feasible because it can be made based on Settlement Class Members' and TD Bank's records.

*Litig.*, 2006 WL 891362, at *9 (D.N.J. April 4, 2006) (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)).  Predominance does not require that every relevant issue before the Court be postured identically for each and every proposed class member.  *Amchem*, 521 U.S. at 623; *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 484 (W.D. Pa. 1999).

To determine whether common issues will predominate, the underlying elements of the substantive claim must be identified.  Here, Defendant's liability turns on, among other things, whether TD Bank's reopening of accounts without customer authorization after the account's closure in order to post a debit, credit, or fee to the account constitutes a breach of contract or a breach of the covenant of good faith and fair dealing.  Every Settlement Class Member's claims may be proven by the same set of facts.  Moreover, determining whether and to what extent Settlement Class Members were injured turns on common proof.  Regardless, when common questions of law or fact predominate regarding liability, "the existence of individual questions as to damages is generally unimportant."  *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008).  Each element presents issues that are sufficiently cohesive and common to warrant adjudication by representation.  Moreover, because this case has settled, the Court need not "consider the available evidence and the method or methods by which plaintiffs would use the evidence to prove the disputed element at trial[,]" because there will be no trial.  *Sullivan*, 667 F.3d at 306 (internal quotation marks and citation omitted). As a result, the predominance element is satisfied.

### 2.    Superiority Exists Here.

The superiority prong asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The rule expressly sets forth a list of relevant factors: putative class members' interest in bringing individual actions; the extent of existing litigation by class members; the desirability of

concentrating the litigation in one forum; and potential issues with managing a class action.  Fed. R. Civ. P. 23(b)(3)(A-D).  Here, the superiority requirement is satisfied.

First, no members of the putative classes expressed interest in bringing individual actions other than Plaintiffs here.  Second, it is well settled that a class action is the superior method of adjudication where, as here, "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue . . . [and] there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims."  *Jankowski v. Castaldi*, 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006).  A class action would be the only practical way of resolving the claims of the putative class members here, while at the same time, avoiding the potential for repetitious litigation and inconsistent adjudications if the claims were pursued individually.  In light of the fact that each putative class member has a relatively small damage claim, combined with the fact that consumer class actions like this one are particularly expensive, complicated and lengthy, this is not surprising.  *See, i.e. Graphite Prods.*, 2006 WL 891362, at *16 ("the relatively small purchase price of bulk extruded graphite parts would likely preclude litigating this action outside a class action"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis omitted).  Third, individual litigation has the potential to result in inconsistent or contradictory judgments.  Fourth, a class action presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Because the case is settled, no manageability issues will arise.  *Sullivan*, 667 F.3d at 306.  Certification of the Settlement Class will allow for efficient resolution of claims that would likely not be brought

owing to prohibitive legal expenses, while at the same time preserving scarce judicial resources. Without the class action vehicle, the putative classes would have no reasonable remedy, and Defendant would be permitted to retain the proceeds of their violations of law. Accordingly, a class action is the best available method for the efficient adjudication of this litigation.

C.   **Plaintiffs' Counsel Should Be Appointed Class Counsel.**

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." The factors listed under Rule 23(g) all favor appointment of Golomb Sprit Grunfeld, P.C. and Webb, Klase & Lemond, LLC as Class Counsel.

Class Counsel worked extensively to identify and investigate the claims, defended substantive and discovery matters before this Court, reviewed thousands of pages of documents, and responded to written discovery, among other things. Collectively, Class Counsel has substantial knowledge of this case in particular and experience in litigating complex consumer class actions in general. *See* Plaintiffs' Counsel Decl. at ¶ 55. Class Counsel has expended and will continue to expend the necessary resources to represent the Settlement Class. For these reasons Class Counsel should be appointed class counsel at this juncture of the case.

III.   **THE COURT SHOULD APPROVE THE NOTICE PLAN.**

Once a settlement has been reached on a class-wide basis, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed. R. Civ. P. 23(c)(2)(B). It is not necessary to actually notify all Settlement Class members; "due process does not require actual notice, but rather a good faith effort to provide actual notice." *In re Prudential Ins. Co. of*

*Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997).

As for content of the notice, Rule 23 requires that the notice use clear, concise, and plain language to inform members of:

> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).   In the settlement context, notice must also "be designed to summarize the litigation and the settlement to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 327 (3d Cir. 1998) (internal quotations omitted).

### A.     The Plan and Form of Notice.

In total, there are two different forms of Notice contemplated that will be sent directly to potential Settlement Class Members: (1) E-Mail Notice and/or Mail Notice that will be sent to all potential Settlement Class Members' last known e-mail or mailing address; and (2) Long-Form Notice posted on the Settlement Website.   *See* Settlement Agreement, ¶ 65.   The costs of providing Notice will be paid out from the Settlement Fund.

The primary method of notice for potential Members of the Settlement Class is individual E-Mail Notice to the last known email address shown on TD Bank's records.   The secondary method of notice is individual Mail Notice to the last known mail address shown on TD Bank's records, or at a more current address, if that information can reasonably be obtained by the

Settlement Administrator.  *See* Settlement Agreement, ¶ 66.  Within 30 days from the date that the Settlement Administrator receives the Notice Recipient List, the Settlement Administrator shall (1) send E-Mail Notice to potential Members of the Settlement Class for whom the Settlement Administrator was provided an email address; and (2) mail Mail Notice to potential Members of the Settlement Class for whom there are no email addresses on file.  *Id.* at ¶ 64.

The Settlement Administrator shall run the mailing addresses through the National Change of Address Database before mailing.  *Id.*  If an email is returned as undeliverable, the Settlement Administrator shall mail the Mail Notice to the potential Settlement Class Member. *Id.*  For all potential Members of the Settlement Class, if the mailed postcard is returned as undeliverable, the Settlement Administrator shall use reasonable efforts to locate a current mailing address for the Settlement Class Member and re-mail the notice to the current address. *Id.*

The E-Mail and Mail Notice will direct potential Members of the Settlement Class to the Long-Form Notice, which will be posted on the Settlement Website.  The E-Mail Notice will include a hyperlink to the Long-Form Notice.  As soon as practicable following Preliminary Approval, but prior to the sending of Notice, the Settlement Administrator shall establish the Settlement Website and a toll-free telephone line for potential Members of the Settlement Class to call with questions.  *See* Settlement Agreement, ¶ 68.  The Internet address (URL) of the Settlement Website and the toll-free number shall be included in all forms of Notice sent to potential Members of the Settlement Class.  *Id.*  The Settlement Website shall include the Agreement, the Long-Form Notice, the Preliminary Approval Order, the Claim Form, and such other documents as Class Counsel and TD Bank agree to post or that the Court orders posted on the website.

25

B.     **The Plan Satisfies Rule 23 and Constitutional Due Process.**

The form and content of the Notice plan comply with Rule 23 and constitutional due process.  The Notice plan is reasonably calculated to reach potential Settlement Class Members. First, the Notice plan contemplates sending direct notice to all potential Settlement Class Members at their last known e-mail address, or if no e-mail address is known, to their last known mailing address.  If there exists a forwarding address for these potential Settlement Class Members, Notice will be sent there, and the Settlement Administrator will take all reasonable and efficient efforts to locate potential Settlement Class Members whose E-Mail and/or Postcard Notices are returned as undeliverable.

As to the content of Notice, all forms of Notice use easily understood language to concisely and clearly inform potential Settlement Class Members of the nature of the Action, the definition of the proposed Settlement Class, the claims and issues, the ability to appear through counsel, the ability and process for requesting exclusion, and the binding effects of the Settlement.  The Notices also explain the terms of the Settlement, the scope of the releases, the Claims process, and how Settlement Class Members may opt-out or object.

C.     **The Proposed Notice Timeline.**

As outlined in the Proposed Order attached hereto, Plaintiffs propose the following settlement administration timeline, with deadlines measured from the date of the Court's Order granting Preliminary Approval of the Settlement:

| **Deadline** | **Proposed Dates** |
|---|---|
| Entry of Court Order granting Preliminary Approval | |
| Creation of Settlement Website by Settlement Administrator | 45 days after Preliminary Approval |

| TD Bank to provide Notice Recipient List to Settlement Administrator | 60 days after Preliminary Approval |
|---|---|
| Notice is e-mailed and/or mailed | 90 days after Preliminary Approval |
| Filing Deadline for Plaintiffs' Motion for attorneys' fees and expenses, and for Service Awards | 30 days after Notice Deadline |
| Deadline for objections and requests for exclusion | 60 days after Notice Deadline |
| Submission deadline for Claims | 90 days after Notice Deadline |
| Filing Deadline for Plaintiffs' Motion for Final Approval | 14 days before Final Approval Hearing |
| Final Approval Hearing | _____<br><br>(no earlier than 190 days after Preliminary Approval to be set by the Court) |

## IV.    PLAINTIFFS' MOTION FOR LEAVE TO FILE A MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS FOR THE PLAINTIFFS.

Pursuant to the above proposed schedule, Plaintiffs seek leave to file a motion for attorneys' fees, reimbursement of expenses, and for Service Awards for the Plaintiffs in accordance with the Settlement Agreement.  As specified in the Proposed Preliminary Approval Order filed herewith, Settlement Class Counsel's motion for fees, expenses, and Service Awards shall be filed thirty (30) days in advance of the Settlement objection and exclusion deadlines. The timing and form of the Notice plan, discussed above, will provide Settlement Class Members with both sufficient notice of the motion for fees and expenses, and a reasonable opportunity to review it prior to determining whether to object to the motion, object to the Settlement Agreement, or opt out of the Settlement Class.  Additionally, the Long Form Notice includes the date on which the motion for fees and costs shall be filed, and informs the Settlement Class that the motion will be made available on the Settlement Website.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the proposed Preliminary Approval Order.

DATED this 27th day March, 2023.

Respectfully submitted,

BY:     GOLOMB SPIRT GRUNFELD, P.C.

*/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld, Esquire
 New Jersey Bar No.: 026091999
1835 Market Street
Suite 2900
Philadelphia, PA 19103
(215) 985-9177
kgrunfeld@golomblegal.com

E. Adam Webb
G. Franklin Lemond, Jr.
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-9325
Adam@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 27, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

*/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld
